## Cas No. 7,933.

### KRIESLER v. MORTON.

[1 Curt. 413.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1853.

CUSTOMS DUTIES—PROTEST—FORM AND SUFFICIENCY OF.

1. Under the act of February 25, 1845 (5 Stat. 727), requiring a protest in writing, at or before the payment of duties, to enable the party paying to maintain an action, no substantive ground of objection to the payment, not contained in the protest, can be taken at the trial.

[Cited in Burgess v. Converse, Case No. 2,-154.]

2. A protest having stated only, that the invoice value was correct, the plaintiff was not allowed to show that the appraisement was not made in conformity to law.

[Cited in Burgess v. Converse, Case No. 2,-154.]

[See Bangs v. Maxwell, Case No. 841.]

3. The fact that the deputy collector dictated the form of the protest, does not estop the collector from denying its sufficiency for a purpose, which does not appear to have been brought to the notice of the deputy collector.

[Cited in Frazee v. Moffitt, 18 Fed. 586; Herman v. Schell, Id. 892; Arthur v. Morgan, 112 U. S. 501, 5 Sup. Ct. 244.]

This was an action for money had and received against the defendant [Marcus Morton], who was formerly collector of the customs for the port of Boston, to recover an excess of duties alleged to have been illegally exacted. At the trial, the plaintiff [John Kriesler] produced the entry of the merchandise, in which its value was declared on oath, in the usual form, and then showed that he had been compelled to pay, in addition to the ad valorem duty imposed by law, a duty of twenty per cent. The merchandise consisted of fruit and raisins imported from Malaga, and entered in October, 1848. Previous to paying this additional duty, the consignees of the plaintiff, who is a foreign merchant, made the following protest: "We hereby protest against paying the additional duty, on the within goods, as we consider them fairly invoiced at the time and place of exportation." The plaintiff here rested his case. The defendant then called one of the government appraisers of the port of Boston, who produced an appraisement in writing, signed by himself and another government appraiser, by which it appeared, that they valued the goods as of the time and place of exportation. It was admitted that the goods were the product of the country whence they were exported. It further appeared that the plaintiff, having appealed from this decision of the appraisers, two merchant appraisers were appointed by the collector, who also valued the goods as of the time and place of exportation, and decided that that value exceeded the invoice value by more than ten per centum. But these appraisers did

¹ [Reported by Hon. B. R. Curtis, Circuit Justice.]

not actually see and examine the goods. The plaintiff's counsel insisted, that both these appraisements were void, and consequently not sufficient in law to displace the value as declared in the entry, because the valuation should have been as of the time and place of procurement, and because the merchant appraisers did not see the goods. But the court ruled, that as neither of these grounds of objection to the payment was specifically pointed out in the protest, they were not open to the plaintiff on the trial. The plaintiff then offered to prove, that the form of the protest was dictated by the deputy collector, and he read a circular from the secretary of the treasury, under date of May 15, 1845, (1 May, 318,) in which it is said: "It will be but just to importers, who may hereafter manifest dissatisfaction at the charge of duties, and doubt of their legality at the time of their payment, or prior thereto, to make them fully aware of the requirements of the act referred to, in relation to protests." And he insisted that the defendant was estopped from denying the sufficiency of the protest. But the court excluded the evidence and the defendant had a verdict. The plaintiff moved for a new trial.

CURTIS, Circuit Justice. The questions involved in this motion, are of very considerable importance, because they are understood to affect other cases, and certainly have a direct bearing on the practice of merchants in making their protests. The principal question is, whether the plaintiff had complied with the requirement of the last clause of the act of congress of February 26, 1845 (5 Stat. 727). It is as follows: "Nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of said duties, setting forth, distinctly and specifically, the grounds of objection to the payment thereof." Did this protest set forth distinctly and specifically the grounds of objection to the payment of the additional duty of twenty per cent? The act of July 30, 1846, § 8 (9 Stat. 43), requires "the collector within whose district the same may be imported or entered, to cause the dutiable value of such imports to be appraised, estimated, and ascertained in accordance with existing laws; and if the appraised value thereof shall exceed, by ten per centum or more, the value so declared on the entry, then, in addition to the duty imposed by law on the same, there shall be levied, collected, and paid, a duty of twenty per centum ad valorem on such appraised value." It is questionable whether the whole of this section does not apply solely to the cases of declarations of increased values voluntarily made by the owner, consignee, or agent, before entry. But this is not ma-

terial in the present case; because it has been determined in the case of Barnard v. Morton [Case No. 1,005], that if this express reference to existing laws, contained in the eighth section of the act of 1846, does not make them applicable to other cases than those mentioned in the first part of that section, still the sixteenth and seventeenth sections of the act of 1842 [5 Stat. 563] were in force as to goods procured by purchase; and this·law makes it the duty of the collector to impose an additional duty, in case the appraised value exceeded the declared value a certain amount. Neither of these laws refers to the actual value, as ascertainable by evidence aliunde, but exclusively to the appraised value. If the appraisement results in this greater sum, the penalty must, by law, be imposed, and it is no answer to such a case; for the importer to assert that his declared value was the true value. Such an assertion, even if proved, displaces no element in the case required by law to ·be visited with the penalty. It would still be true that the appraised value· exceeded it, and that the collector had legally exacted the additional duty. It follows that the only grounds open to the importer in such a case are, to deny that the appraisement was made, in accordance with existing laws, or that it had resulted in that excess over the declared value, which requires the collector to impose the penalty. On the trial of this case, the plaintiff denied the former of these, viz. that the appraisement was made in accordance with the law. His grounds were, that the law required the appraisers to see the goods, and to appraise their value as of the time and place of procurement; and that, in point of fact, they did not see the goods, and did appraise them as of the time and place of exportation. But the protest does not set forth or allude to either of these grounds of objection. It simply says, the invoice value is the true value; which, as· already stated, is not a valid ground of objection, and certainly is not the ground now relied on.

It has been suggested at the bar, that, in some former cases, the same form of protest has been held sufficient to enable the plaintiff to recover after an appraisement. It is quite possible, that protests in this form have come before the court in other trials. I have a recollection of one such case; and it may be, that objections have been taken, at the trial, to such protests, and that such objections were held not to be tenable. But that this precise objection has ever before been pointed out, I am not aware. It having been pointed out in this case, I have considered it, both at ·the trial, and again on this motion. It seems to me to be necessary, under this act of congress, to set forth, in the protest, every ground of objection to the payment protested against; and, as a necessary consequence, no ground can be taken at the trial, which does not there

appear. These protests are commercial documents, usually made in the hurry of business, and entitled to a liberal interpretation. No technical precision should be required. But they must allege, distinctly and specifically, every substantive objection to the payment, so that it shall appear that it was in the mind of the party, and was brought to the knowledge of the collector. I think the plaintiff did not comply with this requirement of the statute, and, consequently, can not maintain this action, unless the other point, that the defendant is estopped, is tenable.

Passing by the questions, whether it is in the power of the collector himself to waive the performance of what the act of congress requires, and whether the act of the deputy collector, in this behalf, binds the collector, I am not able to perceive, in this case, ground for an estoppel to prevent the collector from insisting on the objection to the protest now taken. That objection is, in substance, that the protest is not so drawn as to enable the plaintiff to deny that the appraisers saw the goods, or appraised their value as the law requires. There is an additional· fact stated in the motion for a new trial, as newly discovered, viz. that in making the appraisement, the appraisers were governed by an invoice of fruit imported into New York, without knowing its quality when compared with the plaintiff's goods. This fact, if legitimately in the case, can have no influence, save in connection with the fact that the appraisers did not examine the plaintiff's goods. But it was not offered to be proved, that the deputy collector, when he gave the advice about the form of the protest, was made aware that the appraisers did not see the goods; the affidavit of Mr. Worthington states that this fact was afterwards discovered; but when, in reference to the date of the protest, does not appear; and, therefore, neither the deputy collector, nor any one bound by his act, can be estopped from denying the applicability of the protest to a state of facts not laid before him; and as to the other objection, that the appraisement of the value was not made as of the time of procurement, but as of the time of exportation, there is not the least reason to suppose that the plaintiff, at that time, any more than the deputy collector, believed that was an objection, or intended to embrace it in his protest as one ground of objection. It was not until the decisions of the supreme court, in Greely v. Thompson, 10 How. [51 U. S.] 225, and Griswold v. Maxwell, Id. 242, that it became known that this mode of proceeding at the customhouse, under the instructions of the secretary of the treasury, was not in conformity to law, and this protest shows that the plaintiff did not then rely on this objection, for it makes reference to the time of exportation, as the time, in respect to which the

correctness of the valuation is to be judged. To let the plaintiff in now, to a ground not taken in the protest, because the deputy collector did not apprise him of the necessity of taking an objection, not then thought of by either of them, would be carrying the doctrine of estoppel to a dangerous length. The motion for a new trial is overruled, and judgment is to be rendered on the verdict.

[The case was further considered in Case No. 7,934.]